UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| RAYMOND THOMAS ADKINS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:10-CV-206 |
| | ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This case is before the Court on plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 9, 10] and defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 11, 12]. Plaintiff, Raymond Thomas Adkins, seeks judicial review of the decision of the Administrative Law Judge (the "ALJ"), which is the final decision of defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 3, 2007, plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income ("SSI"), claiming a period of disability which began on January 10, 2007 [Tr., pp. 112-14]. After plaintiff's application was denied initially and upon reconsideration, plaintiff requested a hearing. On June 29, 2009, a hearing was held before an ALJ to review the determination of plaintiff's claim [*Id.*, p. 27]. On August 26, 2009, the ALJ found that plaintiff was not disabled. The Appeals Council declined plaintiff's request for review and thus, the decision of the ALJ became the

final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

I.  **The ALJ's Findings**

> The ALJ made the following findings:
>
> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since January 10, 2007, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following combination of severe impairments: chronic lower back pain status post fusion, chronic neck pain, osteoarthritis, recurrent kidney stones with associated pain, diabetes, memory loss, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can do no more than occasional climbing, stooping, bending, crouching, crawling, or kneeling; he would require a sit/stand option so that he could sit or stand as necessary for comfort which would require a brief break period in between each change of position; he cannot do more than occasional reaching above his head with his right arm; and due to pain, he would have a moderate but satisfactory ability to deal with work stresses, to maintain attention and concentration, and to demonstrate reliability.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 8, 1959 and was 47 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr., pp. 18-25].

## II. Disability Eligibility

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis, summarized as follows:

>1. If claimant is doing substantial gainful activity, he is not disabled.
>
>2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
>3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
>4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
>5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity

4

and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  A plaintiff bears the burden of proof at the first four steps.  *Walters*, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  *Id.*  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

**III.   Standard of Review**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson*, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

**IV.    Medical Evidence**

On March 12, 2007, John G. Paty, M.D., reported that plaintiff was not feeling well, that he was sleeping, gaining weight, and that another physician, Dr. Lundy, had raised the issue of a pituitary disease [Tr., p. 301]. On examination, Dr. Paty reported a preserved range of motion in plaintiff's shoulders, elbows, wrists, knees, and ankles [*Id.*]. Dr. Paty raised concerns about increasing the doses of plaintiff's pain medications, especially in light of plaintiff's complaints of somnolence [*Id.*]. Dr. Paty commented that if plaintiff's pain medications were increased, plaintiff would need to begin pain management, because Dr. Paty felt, that "clearly[,] at this point and time I am not clear on what is going on." [*Id.*, p. 302].

On April 9, 2007, plaintiff saw McKinley S. Lundy, D.O. [Tr., pp. 305-14]. Dr. Lundy noted that plaintiff understood that no treating relationship existed and that the report from the examination would be sent to Mr. Bilbo [*Id.*, p. 305]. Plaintiff told Dr. Lundy that he underwent back surgery in 2001, that he was "brutally beaten and stomped" in 2004, and that this beating produced immediate pain to his lower back, along with memory loss and other symptoms [*Id.*, p. 306]. Dr. Lundy noted that plaintiff had a 360 degree spinal fusion in April 2005, performed by Dr. Bonvallet [*Id.*, p. 312]. Dr. Lundy reviewed plaintiff's recent work history, and plaintiff reported that he had not worked in January 2007 because

7

the Department of Transportation would not certify him given the medications he was taking [*Id.*, p. 308]. Dr. Lundy noted that although plaintiff quit smoking in approximately 2001, he began again in January 2006, and was smoking one pack a day as of the date of the examination [*Id.*].

On physical examination, Dr. Lundy reported a good, active range of neck motion except for decreased left side bending [Tr., p. 311]. Dr. Lundy observed a normal gait and reported that plaintiff was able to squat and arise without difficulty or complaint [*Id.*]. When Dr. Lundy palpated plaintiff's lumbar spine he did not report any tenderness or spasm of paravertebral muscles and "[a]xial compression produced no complaint of low back pain." [*Id.*]. Dr. Lundy observed that trunk rotation produced no complaint of back pain [*Id.*]. Plaintiff also demonstrated the ability to heel and toe walk without difficulty [*Id.*].

On September 6, 2007, at the request of the Disability Determination Service, plaintiff saw Eva Misra, M.D. [Tr., pp. 324-27]. Plaintiff told Dr. Misra that he could lift about twenty pounds [*Id.*, p. 324]. During her examination of plaintiff, Dr. Misra commented, "I am not sure if he is reliable. He is moaning and groaning a lot." [*Id.*, p. 325]. Dr. Misra noted that plaintiff's grip strength and mobility were normal [*Id.*]. She also reported normal strength in all major muscle groups [*Id.*, p. 326]. Dr. Misra opined that plaintiff retained the ability to occasionally lift and carry a maximum of twenty pounds, and she opined that he could frequently lift and/or carry a maximum of ten pounds [*Id.*, pp. 326-27]. Dr. Misra also opined that plaintiff could stand and/or walk for six hours and that he could sit for six hours in an eight-hour day [*Id.*, p. 327].

On September 21, 2007, state agency reviewing physician, Joe G. Allison, M.D., reviewed the record and indicated that plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. Dr. Allison found that plaintiff could stand and/or walk for six hours in an eight-hour day and sit for six hours in an eight-hour day [Tr., p. 329].

On December 3, 2007, a state agency reviewer, Larry W. Welch, Ed.D., opined that plaintiff had no severe mental impairments [Tr., p. 336].

On March 5, 2008, Dr. Paty commented in his notes regarding plaintiff's medical history that "[plaintiff] is disabled from gainful employment and is status post lumbar fusion following an assault." [Tr., p. 406]. Neurologically, Dr. Paty reported symmetrical deep tendon knee reflexes, grossly intact sensation, and a normal gait [*Id.*].

On September 22, 2008, Dr. Paty reported a mildly limited range of motion in plaintiff's shoulders and a marked restriction of motion in plaintiff's lumbar spine [Tr., pp. 350-51]. Neurologically, plaintiff had symmetrical deep tendon reflexes, grossly intact sensation, and a normal gait [*Id.*, p. 351].

On October 30, 2008, Dr. Paty filled out a form entitled "Medical Assessment of Ability To Do Work-Related Activities (Physical)," [Tr., pp. 353-60]. When asked how many pounds plaintiff could carry, Dr. Paty responded "[n]one." [*Id.*, p. 353]. When asked how many hours in an eight-hour day plaintiff could stand and/or walk, Dr. Paty responded "[n]one." [*Id.*, p. 354]. When asked how many hours in an eight-hour day plaintiff could sit, Dr. Paty responded "[n]one." [*Id.*]. In support of these findings, Dr. Paty stated, "Lumbar

9

fusion, L3, L4, L5, . . . Lumbar degenerative & cervical degenerative spondylosis limited lumbar & cervical motion with chronic pain." [*Id.*, p. 353].[1]

Dr. Paty also completed another form entitled "Medical Evaluation-Disorders of the Spine Section 1.04." This one page form includes four long paragraphs describing a listed impairment formulated into two lengthy questions. Dr. Paty, responded "[y]es," to the two questions asked of him and signed the form [Tr., p. 358].

**V.     Positions of the Parties**

Plaintiff argues that the ALJ erred in his decision denying plaintiff's application for disability benefits and moves the Court to award benefits in his favor. Plaintiff raises three issues on appeal.[2] He maintains that the ALJ erred: (1) by not finding that plaintiff fulfilled Listing 1.04, (2) by not affording controlling weight to the opinions of Dr. Paty, and (3) in his residual functional capacity ("RFC") finding [Doc. 10].

The Commissioner maintains that the ALJ did not err in his decision and that his decision is supported by substantial evidence. The Commissioner argues that the Court should affirm the ALJ's decision.

**VI.    Analysis**

The Court will address plaintiff's arguments in turn. However, as an initial matter, the Court notes that, in presenting his arguments, plaintiff has done little more than paste

---

[1]Portions of Dr. Paty's statement that were indecipherable have been omitted.

[2]Plaintiff has organized his allegations into two arguments. However, he actually raises three separate issues. The Court will address each issue separately.

large portions of the record into his brief, *see, e.g.* Doc. 10, pp. 4-10, and then recite conclusory arguments and statutory language. As the U.S. Court of Appeals for the Sixth Circuit has stated, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009). The Court has, nonetheless, considered each argument made by plaintiff.

### A. Listed Impairment 1.04, Disorders of the Spine

Plaintiff argues that the ALJ erred by finding that plaintiff did not fulfill the criterion of a listed impairment. Specifically, plaintiff contends that he fulfills Listed Impairment 1.04, Disorders of the Spine. *See* 20 C.F.R., Pt. 404, Subpt. P. App'x 1. In support of this position, plaintiff cites the Court to his testimony at the hearing before the ALJ and "the medical records." [Doc. 10, p. 11].

The Commissioner responds that plaintiff's testimony alone will not support a finding that plaintiff has fulfilled the Listed Impairment, and the evidence in the record does not support such a finding.

As the introductory comments to the musculoskeletal listings state:

> The physical examination [that supports finding a listed impairment] must include a detailed description of the rheumatological, orthopedic, neurological, and other findings appropriate to the specific impairment being evaluated. These physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g., "He says his leg is weak, numb."

*See* 20 C.F.R., Pt. 404, Subpt. P. App'x 1., "1.00 Musculoskeletal System," Subpt. D. The Sixth Circuit has more generally explained, "[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *See Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987).

In order to fulfill Listed Impairment 1.04, a plaintiff must demonstrate a disorder of the spine, resulting in compromise of a nerve, with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P. App'x 1, Listing 1.04.

12

In this case, plaintiff has not directed the Court to any specific medical evidence of prerequisites to finding an impairment under Listing 1.04. The only portion of the record to which plaintiff specifically cites is the "Medical Evaluation-Disorders of the Spine Section 1.04" form completed by Dr. Paty, and for the reasons more fully explained below, the Court finds this form, which contains neither specific findings nor references to objective evidence, is insufficient to support a finding that plaintiff fulfills the criteria contained in Listing 1.04.

Accordingly, the Court finds this allegation of error not well-taken.

### B. The Opinions of John G. Paty, M.D.

Plaintiff argues that the ALJ committed reversible error by failing to afford controlling weight to Dr. Paty's opinions. In support of his position, plaintiff states that Dr. Paty's diagnoses are supported by physical examinations and objective findings [Doc. 10, pp. 12-13]. Plaintiff also contends that the ALJ failed to give specific reasons for rejecting Dr. Paty's opinions [*Id.*, p. 13].

The Commissioner responds that plaintiff has not cited any findings by Dr. Paty that would have entitled him to disability benefits [Doc. 12, p. 10]. The Commissioner adds that it is well-established that a diagnosis alone reveals little about the severity of an impairment [*Id.*]. Finally, the Commissioner maintains that the ALJ provided good reasons for rejecting Dr. Paty's opinions [*Id.*].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

13

with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Initially, the Court notes that it is undisputed that Dr. Paty was plaintiff's treating physician. Further, the ALJ found plaintiff suffered from a number of severe impairments including, *inter alia*, lower back pain status post fusion, chronic neck pain, and osteoarthritis. Thus, the only issue before the Court is the extent to which the ALJ did not credit Dr. Paty's

14

opinion that plaintiff suffered from impairments beyond those found by the ALJ or to a degree beyond that found by the ALJ.

Dr. Paty's opinion, as contained in the two "Medical Assessment" forms he completed, was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," nor was it consistent with the other substantial evidence in the record of this case. The one sentence in support of the conclusions contained in these forms did not cite any findings or objective medical evidence. Instead, Dr. Paty simply answered "[n]one" to the questions asked of him on the first form and answered "[y]es" on the second form. These unexplained assessments are not well-supported, and they are inconsistent with the other evidence in the record, including the findings of Dr. Misra and Dr. Allison and plaintiff's own reports to physicians. Therefore, Dr. Paty's opinion was not entitled to controlling weight. 20 C.F.R.§§ 404.1527(d)(2), 416.927(d)(2).

In explaining why Dr. Paty's medical assessments would not be afforded weight the ALJ stated:

> The claimant and his treating physician (with whom he has a long-term treating relationship) have stated that the claimant cannot lift anything at all, yet he has stated at the hearing that he occasionally helps his wife carry in groceries. . . . The objective medical evidence of record simply does not support the claimant's alleged degree of limitation. . . . Great weight is given to the opinions of the State agency physical and psychological consultants who provided assessments and reviews as they are consistent with the overall evidence of record. The State agency consultants adequately considered the combined effect of the claimant's impairments. The claimant's treating physician, Dr. Paty's, medical assessment of ability to do work-related activities (physical) is given little weight

15

>because it essentially says that the claimant is incapable of doing any exertional activity whatsoever, which is highly unlikely.

[Tr., p. 23].

Based on the above, the Court finds that the ALJ's decision not to afford Dr. Paty's medical assessments either controlling weight or any weight at all are supported by substantial evidence and comply with the applicable statutory requirements for giving good reasons. Accordingly, the Court finds that this allegation of error is not well-taken.

### C. Residual Functional Capacity

Finally, plaintiff alleges that the ALJ erred by "failing to consider the combined adverse effect of the multiple severe medically determinable mental and physical impairments on his ability to engage in substantial gainful activity." [Doc. 10, p. 14]. Plaintiff asserts that he retains the residual functional capacity to perform less than a full range of sedentary work [*Id.*, p. 15]. In support of this position, plaintiff cites Dr. Paty's opinion that he could not lift anything, sit, stand or perform other tasks, such as climbing and balancing [*Id.*]. Plaintiff maintains that his RFC is also eroded by "short-term memory loss, depression and fatigue," although he cites no medical evidence in support of this argument [*Id.*, p. 16].

The Commissioner responds that, for the reasons cited above, the ALJ was not required to incorporate Dr. Paty's findings [Doc. 12, p. 12]. The Commissioner notes that Dr. Welch, a reviewing physician, found plaintiff to have no mental impairments, but nonetheless, the ALJ included mental limitations in the RFC by stating that plaintiff would

16

have only a moderate ability to deal with stress, maintain concentration, and be reliable [*Id.*, p. 11]. The ALJ points out that the ALJ included a sit/stand option in his RFC, and he maintains that the RFC determination is supported by the Dr. Misra's examination findings, Dr. Allison's review of the record, and Dr. Lundy's diagnostic findings [*Id.*, p. 12].

As noted above, the ALJ found that plaintiff retained the RFC to perform:

> [L]ight work[3] as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can do no more than occasional climbing, stooping, bending, crouching, crawling, or kneeling; he would require a sit/stand option so that he could sit or stand as necessary for comfort which would require a brief break period in between each change of position; he cannot do more than occasional reaching above his head with his right arm; and due to pain, he would have a moderate but satisfactory ability to deal with work stresses, to maintain attention and concentration, and to demonstrate reliability.

[Tr., p. 19 (footnote added)].

Having reviewed the record, the Court finds that the ALJ's RFC determination is supported by substantial evidence, including: plaintiff's report to Dr. Misra that he could lift about twenty pounds, [Tr., p. 324]; Dr. Misra's finding that plaintiff could stand and/or walk for six hours and that he could sit for six hours in an eight-hour day, [*Id.*, p. 327]; Dr. Allison's opinion that plaintiff could perform light work, [*Id.*, p. 329]; Dr. Welch's opinion that plaintiff had no severe mental impairments [*Id.*, p. 336]; and Dr. Lundy's diagnostic

---

[3]*See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.")

findings [*Id.*, pp. 305-14], including her observations regarding plaintiff's range of motion, ability to stand and walk, and lack of pain upon palpation. Accordingly, the Court finds plaintiff's final allegation of error not well-taken.

## VII. Conclusion

In sum, the Court finds that the ALJ properly reviewed and weighed the evidence to determine plaintiff is capable of performing light work, with certain enumerated limitations. Substantial evidence supports the ALJ's findings and conclusions. Therefore, plaintiff's Motion For Summary Judgment [Doc. 9] will be **DENIED**, defendant Commissioner's Motion for Summary Judgment [Doc. 11] will be **GRANTED**, and this case will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to close this case. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE